IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| MISTY VALLADARES | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:24-CV-000012 |
| | § | |
| | § | |
| WAL-MART STORES TEXAS, LLC | § | |
| ET AL | § | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, A NEW TRIAL, OR REMITTITUR

After initially denying Defendants' Motion for Judgment as a Matter of Law (DOC #87), the Court now has the benefit of a written transcript, which makes clear that Plaintiff Misty Valladares failed to introduce sufficient evidence to satisfy her burden of showing that an unreasonably dangerous condition existed on Walmart's premises, or that Walmart knew about it. Therefore, upon reconsideration, the Court should grant Walmart's Motion for Judgment as a Matter of Law.

Alternatively, the Court should exercise its discretion and independently weigh the evidence. Given the scant evidence offered by Plaintiff, the jury's verdict was clearly excessive and based on passion or prejudice, but not the evidence. To correct this miscarriage of justice, the Court should order a new trial.

If the Court denies both motions, it should nonetheless substantially reduce the jury's awards of compensatory damages, which were not supported by the evidence.

Table of Contents

I. LEGAL STANDARD ............................................................................................... 4

II. ARGUMENT AND AUTHORITIES ...................................................................... 4

   A.   The Court Should Enter Judgment As a Matter of Law For Defendants........................... 5

      1.   Plaintiff Failed to Establish the Existence of an Unreasonably Dangerous Condition... 5

      2.   Plaintiff Failed to Demonstrate Defendants' Actual or Constructive Knowledge ......... 8

      3.   Plaintiff's evidence is insufficient under Corbin and its progeny................................. 11

   B.   The Court Should Order a New Trial ............................................................................... 12

      1.   Verdict is Against the Great Weight of the Evidence.................................................... 12

      2.   Admission of Evidence ................................................................................................. 13

   C.   Alternatively, The Court Should Grant Walmart's Motion for Remittitur...................... 15

      1.   Past medical expenses.................................................................................................... 16

      2.   Future medical expenses ................................................................................................ 19

      3.   Past and future pain, suffering, and mental anguish .................................................... 21

III. Conclusion ............................................................................................................. 21

Table of Authorities

**Cases**

*Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 319 (Tex. 2024), reh'g denied (June 14, 2024). ................................................................................................................................. 12

*Astolfo v. Hobby Lobby Stores, Inc.*, 2008 WL 2186319 (Tex. App.—Houston [1st Dist.] 2008). ................................................................................................................................ 9, 10

*Brunnemann v. Terra Intern., Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). ..................................... 16

*Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982)................................................................... 13

*City of Austin v. Powell*, 704 S.W.3d 437, 459 (Tex. 2024).......................................................... 4

*Collard v. Interstate Northborough Partners and Texas Maintenance System, Inc.,* 961 S.W.2d 701 (Tex. App.—Tyler 1998, no pet.) .................................................................................. 8

*Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980)......................... 12

*Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)........................................................................... 14

*Evers v. Equifax, Inc.*, 650 F.2d 793, 797 (5th Cir. Unit B 1981). ............................................. 16

*Hansen v. Johns–Manville Products Corp.*, 734 F.2d 1036 (5th Cir.1984). .............................. 16

*Hunter v. Knoll Rig & Equipment Mfg. Co.*, 70 F.3d 803, 808 (5th Cir. 1995). .......................... 4

*In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021) ................................................ 13, 14

*In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d 297, 301 (Tex. 2023)................................. 13

*Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009).................................................................. 12

*Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992).......................................................... 4, 8

*Martin v. Chick-Fil-A*, No. 14-13-00250CV, 2014 WL 465851 (Tex. App. [14th Dist] Feb. 4, 2014). ................................................................................................................................... 5

*Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 658–59 (S.D. Tex. 2019)....................... 16

*Powers v. Bayliner Mar. Corp.*, 83 F.3d 789, 796 (6th Cir. 1996)............................................... 4

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)...................................... 4

*Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995). .................................................................. 4

*Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). ....................................... 13

*Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex. App.—Dallas 1988, no writ). . 13

*Walker v. Ricks*, 101 S.W.3d 740, 746 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.)... 13, 14

*Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) .......................................... 8, 10

*Wells v. Dallas Independent School District*, 793 F.2d 679, 683 (5th Cir.1986) .............. 4, 12, 16

*Westbrook v. General Tire and Rubber Co.,* 754 F.2d 1233, 1241 (5th Cir.1985). .............. 12, 16

**Statutes**

Tex. Civ. Prac. & Rem. Code § 18.001 ................................................................................. 13, 14

**Rules**

Fed. R. Civ. P. 26(a)(2)(C) ........................................................................................................ 15

Fed. R. Civ. P. 50....................................................................................................................... 4

# I. LEGAL STANDARD

Rule 50 of the Federal Rules of Civil Procedure provides that, once a party has been fully heard on an issue during jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party, the court may resolve the issue against the party and grant a motion for judgment as a matter of law. Fed. R. Civ. P. 50.

Judgment as a matter of law is granted in two situations. The first situation is when there is a complete absence of proof on an issue material to the claim. *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995). A mere scintilla of evidence is insufficient to present a jury question. *Hunter v. Knoll Rig & Equipment Mfg. Co.*, 70 F.3d 803, 808 (5th Cir. 1995). The second situation is when there are no controverted issues of fact on which reasonable persons could differ. *Powers v. Bayliner Mar. Corp.*, 83 F.3d 789, 796 (6th Cir. 1996). The court must view all the evidence in the light most favorable to the nonmovant and accept reasonable inferences in favor of the nonmovant. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).

# II. ARGUMENT AND AUTHORITIES

"[N]egligence is never presumed, and [ ] the mere happening of an accident is no evidence at all of negligence." *City of Austin v. Powell*, 704 S.W.3d 437, 459 (Tex. 2024) (quoting *Wells v. Tex. Pac. Coal & Oil Co.*, 164 S.W.2d 660, 662 (1942)). In all negligence actions, the foreseeability of the harmful consequences resulting from the particular conduct is the underlying basis for liability. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983).

In Texas, for a plaintiff to prevail on a premises liability claim, she must prove by a preponderance of the evidence that: (1) a condition on the premises posed an unreasonable risk of harm; and (2) the owner had actual or constructive knowledge of the risk. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.

1983). Plaintiff failed to present legally sufficient evidence to establish that an unreasonably dangerous condition existed on the premises, and that Walmart had actual or constructive knowledge of it. Because there is a complete absence of proof on these two elements of liability, Defendants are entitled to Judgment as a Matter of Law, notwithstanding the jury verdict.

In the alternative, Defendants are entitled to a new trial because the jury's verdict is against the great weight of the evidence, and because Defendants were prejudiced by the erroneous admission of certain evidence. If the Court does not grant a new trial, then Defendants request a remittitur.

## A.    THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW FOR DEFENDANTS.

### 1.    *Plaintiff Failed to Establish the Existence of an Unreasonably Dangerous Condition*

Plaintiff failed to present legally sufficient evidence that there was a condition that rises to the level of an unreasonable risk of harm. To analyze that element of her claim, Texas Courts consider the following factors:

(1)    Whether the condition was clearly marked;
(2)    The height of the condition;
(3)    Whether any injuries had occurred in the past;
(4)    Whether any other invitees had complained about the condition;
(5)    Whether the condition or object at issue was unusual as compared to other objects in the same class;
(6)    Whether the construction or placement of the condition would serve as a warning that the object presented the prohibited degree of danger;
(7)    Whether the invitee had reasonable alternatives other than to traverse areas where the condition was located.
(8)    Whether the condition met applicable safety standards.

*See Martin v. Chick-Fil-A*, No. 14-13-00250CV, 2014 WL 465851 (Tex. App. [14th Dist.] Feb. 4, 2014).

Plaintiff offered four witnesses to testify about the purportedly unreasonably dangerous

condition—*i.e.*, the stacked totes that fell on her—but none of her witnesses knew how the totes were displayed before the incident or, critically, what was unreasonably dangerous about them. Therefore, the evidence established only that the totes were stacked, and then that they fell. But because Plaintiff failed to introduce evidence concerning *how* the totes were stacked or identify anything unreasonably dangerous about the stack, she failed to meet her burden.

First, Plaintiff offered the testimony of John Amador, who was present when the totes fell and who restacked the totes after the fall. DOC #100, 112:25-113:2. Although Mr. Amador restacked the totes in the same area, he was clear that he did not see them and did not pay attention to those smaller totes before the incident. DOC #100, 137:25-138:19, 139:19-20. Therefore, because Mr. Amador's testimony related to the stack that he replaced after the incident, it did not establish anything about the condition of the totes *before* the incident and did not satisfy Plaintiff's burden.

Next, Plaintiff offered Walmart associates Marina Gonzalez and Nora Mier. But neither of those witnesses observed the condition of the totes before they fell; rather, both arrived after the incident. Gonzalez testified that she did not know how the totes were stacked before or at the time of the accident. DOC #100, 159:18-20. Ms. Mier, who was a Team Lead in charge of the seasonal department, specifically testified that she did not know how the totes had been stacked, but if she had seen a dangerous condition, she would have fixed it. DOC #100, 187:18-20; 189:10-12.

Finally, Plaintiff testified about the event. Plaintiff also did not observe the stack before it fell. DOC #99, 180:19-20 ("And I knew I didn't need those, so I didn't pay much attention to that."); DOC #99, 201:10-17 ("Q: This was – you didn't notice anything wrong with the merchandising of the totes prior to this incident, true? A: That is correct. … Q: You don't have any – you can't say anything relative to before the incident how the totes were stacked? A: Not

before the incident, no."). She could not identify who stacked them, DOC #99, 201:18-19, when they were stacked, *id.* at 201:20-21, how they were stacked, *id.* at 202:9-15, or how many customers touched, moved, or interfered with the stack, *id.* at 202:1-3. She was unaware of any other incident in the store involving totes, *id.* at 202:16-22. And she offered no testimony about their condition before the accident. She also testified that when she first saw the totes, before the accident she didn't consider that she was in any danger. DOC #99, 205:13-15.

Plaintiff offered no other evidence describing the condition, let alone supporting her assertion that it was unreasonably dangerous. She presented no retail experts or other experts to opine that the stack was unreasonably dangerous. Therefore, she failed to meet her burden.

Moreover, the factors identified above weigh in favor of Defendants and support a finding that the stack was *not* unreasonably dangerous. Plaintiff admitted that the display was clearly marked—it was easily visible, conspicuous, and not hidden from view. There was no evidence that stack was abnormally or unusually tall. There was no evidence that the display at issue had ever injured anyone else. There was no evidence that anyone had ever complained about the condition of the display, either on the date of incident or any other time. There was no evidence that the display failed to meet any safety standards. Put simply, Plaintiff presented no evidence that there was anything unusual about the display at issue, much less dangerous—or unreasonably so. Indeed, Plaintiff admitted that she saw nothing wrong with the stack, nothing which indicated to her that it was dangerous, and nothing that suggested it was unsteady. Ms. Mier testified that if the totes were stacked the way Plaintiff speculated they were, **that would be a safe way to display them**. DOC #100, 118:22.

Based on the foregoing, Plaintiff failed to present legally sufficient evidence to demonstrate that the display presented an unreasonable risk of harm under Texas law. Therefore, the Court

should grant Judgment as a Matter of Law in favor of the Defendants.

### 2. *Plaintiff Failed to Demonstrate Defendants' Actual or Constructive Knowledge*

To establish that Walmart knew the bins were improperly stacked, Plaintiff was required to show that one of the following two situations existed: (1) Walmart actually knew that the bins were going to fall and negligently failed to correct the unsteady stack; or (2) the precarious condition of the bins existed for so long that Walmart should have discovered and corrected it in the exercise of reasonable care. *See Collard v. Interstate Northborough Partners and Texas Maintenance System, Inc.,* 961 S.W.2d 701 (Tex. App.—Tyler 1998, no pet.) (*citing Keetch,* 845 S.W.2d at 264–66). Even if there were evidence that the bin stack presented an unreasonably dangerous condition, Plaintiff presented no evidence establishing Walmart's actual or constructive knowledge of it. None of Plaintiff's witnesses testified that Walmart knew about a dangerous condition before the incident. Therefore, Plaintiff's case hinged on showing Walmart's constructive knowledge, but she failed to satisfy her burden..

### a. **Wal-Mart Stores, Inc. v. Reece**

In *Wal-Mart Stores, Inc. v. Reece,* the Texas Supreme Court addressed the time-notice rule, "which is based on the premise that <u>temporal evidence</u> best indicates whether the owner had a reasonable opportunity to discover and remedy a dangerous condition." *Wal-Mart Stores, Inc. v. Reece,* 81 S.W.3d 812, 816 (Tex. 2002) (emphasis added). The Court held that "[w]ithout some temporal evidence, there is no basis upon which the fact finder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Id.* Moreover, "there must be some proof of how long the hazard was there before liability can be imposed on the premises owner for failing to discover and rectify, or warn of, the dangerous condition. *Id.* Otherwise, owners would face strict liability for any dangerous condition on their premises, an

approach we have clearly rejected." *Id.*

### b.  Astolfo v. Hobby Lobby Stores, Inc.

In *Astolfo v. Hobby Lobby Stores, Inc.*, the First Court of Appeals applied the time-notice rule and affirmed summary judgment for retailer Hobby Lobby in a premises liability case brought by a customer who alleged merchandise fell from a shelf and struck her. *Astolfo v. Hobby Lobby Stores, Inc.*, 2008 WL 2186319 (Tex. App.—Houston [1st Dist.] 2008).

In that case, two nesting tables spontaneously fell from the top display of a shelf while the plaintiff was walking down an aisle. *Id.* at *1. Before the incident, the tables had been on top of the display shelf for three to six weeks without incident. *Id.* Evidence showed that displaying merchandise on high shelves was a common and well-established practice of Hobby Lobby and other retailers, but the plaintiff presented no evidence of other merchandise spontaneously falling from a shelf. Moreover, while the plaintiff introduced three years of incident reports of merchandise striking customers, none of the prior instances occurred in the same manner as the plaintiff's incident. *Id.* at *2.

In affirming summary judgment for Hobby Lobby, the Court of Appeals explained that the only temporal evidence established that immediately before the incident, the display was secure and showed no signs of presenting a dangerous condition. *Id.* at *3. The tables were not leaning forward or hanging off the shelf, and the plaintiff had presented no evidence that Hobby Lobby should have discovered that the tables caused an unreasonably dangerous condition. *Id.* Thus, the *Astolfo* court illustrated application of the "time-notice rule," which requires a plaintiff to present temporal evidence and thus prevents the imposition of liability on a storekeeper based upon either the carelessness of another over whom the storekeeper had no control, or "the fortuitous act of a single customer."

### c. **Analysis**

Like in *Astolfo*, Plaintiff presented no evidence to support a finding that immediately before the accident, the stacked merchandise was unstable or stacked too high. In fact, she presented no evidence concerning *how* the merchandise was stacked and was unable to confirm when it was stacked or whether any customers interfered with it. Thus, Plaintiff's testimony shows only that an incident occurred, but it fails to satisfy the Texas Supreme Court's mandate in *Reece*--that is, the existence of "some temporal evidence" from which "the fact finder can reasonably assess the opportunity the premises owner had to discover the dangerous condition," *Reece*, 81 S.W.3d at 816,

Plaintiff relied primarily on her allegation that Ms. Mier, who responded after the incident, stated the totes were stacked incorrectly. According to Mr. Amador who restacked the totes *after* they fell, Ms. Mier came "[a]fterwards…and said, hey, those are stacked wrong. … She said they're stacked wrong, look at it." DOC #100, 114:17-24. Likewise, Plaintiff testified as follows:

> *Q: Okay. So what happened after the totes fell on you?*
>
> **A: John walked around the basket to lift the totes.**
>
> *Q: John picked the totes up?*
>
> **A: Yes.**
>
> *Q: The whole stack?*
>
> **A: And he -- he pushed them up, yes.**
>
> *Q: Okay. And he got them off of you?*
>
> **A: And he got them off of me.**
>
> *Q: Okay. And after he got the totes off of you, were you able to get up?*
>
> **A: Yes, I was able to get up.**
>
> *Q: Okay. And did someone from the store come over and talk to you?*
>
> **A: Yes.**
>
> *Q: And was that Nora?*
>
> **A: It was Nora Mier.**

*Q: Okay. And did you know her name at that time?*

**A: Yes.**

*Q: Okay. From growing up, being in Port Lavaca?*

**A: Yes.**

*Q: And what did Nora say to you?*

**A: She said she was observing the totes, the way that they were stacked, and she said, look at this, these aren't even stacked right. And I know exactly who did this. They aren't even stacked right.**

DOC #99, 182:1-25. However, the testimony of both Mr. Amador and Plaintiff confirm that Ms. Mier's post-incident statements referred to the merchandise after Mr. Amador had restacked it. Indeed, Ms. Mier did not respond until after the incident, and there was no evidence that she even saw the stack before the incident. Therefore, Plaintiff offered no evidence of Walmart's knowledge *before* the incident. The Court should enter judgment as a matter of law for the Defendants.

### 3.    *Plaintiff's evidence is insufficient under Corbin and its progeny.*

In *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983), the Texas Supreme Court established a limited, additional basis for liability based upon a storeowner's negligent method of operation. There, the plaintiff sued Safeway after falling on a grape in the produce section. *Id.* The grapes were displayed on a self-service, angled display that the store knew had a high probability of dropping grapes. *Id.* The Texas Supreme Court held that, even though the retailer was not aware of the specific grape on the ground, it could nonetheless be held liable because it knew the method of display carried a high risk of danger. *Id.* The court explained that, "the foreseeability of the harmful consequences resulting from the particular conduct" was "the underlying basis for liability," so the plaintiff could recover if he showed the storeowner's "knowledge of the foreseeable harm of some course of conduct or method of operation." *Corbin* at 296.

The Texas Supreme Court has since limited the applicability of *Corbin*. For example, it

explained recently in *Albertsons, LLC v. Mohammadi* that, "[t]o the extent *Corbin*'s approach could ever be employed after our more recent cases, it would only be in a situation where—as in *Corbin*—the defendant had a policy or practice that it knew routinely created an unreasonable risk of harm." The *Albertsons* court elaborated that, "[i]n *Corbin*, the store 'admitted that at the time of [the plaintiff's] fall it knew of this unusually high risk associated with its grape display.'" But the court distinguished such evidence from the evidence in *Albertsons*, where there "no evidence that employees knew that putting returned goods in a wire shopping cart led to spills on the floor.'" *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 319 (Tex. 2024), reh'g denied (June 14, 2024).

Here, Plaintiff presented no evidence that Walmart had a policy that it knew routinely created an unreasonable risk of harm. There was no evidence of other incidents or injuries. In fact, the only testimony about the safety of the display was from Ms. Mier, who stated "that, to me, is safe." DOC #100, 118:22.

Because Plaintiff failed to meet her burden of proof, Defendants are entitled to judgment as a matter of law.

**B.    THE COURT SHOULD ORDER A NEW TRIAL**

*1.    Verdict is Against the Great Weight of the Evidence.*

When a jury verdict results from passion or prejudice, a new trial, not remittitur is the proper remedy. *Wells v. Dallas Independent School District,* 793 F.2d 679, 683 (5th Cir.1986) (citing *Westbrook v. General Tire and Rubber Co.,* 754 F.2d 1233, 1241 (5th Cir. 1985). New trials should be granted when the verdict is against the great weight of the evidence. *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). The Court can weigh all of the evidence in its determination. *See Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009). In its determination as to whether the verdict is against the great weight of the evidence, the Court does

not need to view the evidence in the light most favorable to the Plaintiff. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).

Section A, above, is incorporated herein as if fully set forth in this section. As described, the jury's verdict is contrary to the great weight of the evidence in that there is no evidence of either an unreasonably dangerous condition or Defendants' knowledge of such a condition. Therefore, the Court should order a new trial.

### 2.  *Admission of Evidence*

The Court should also order a new trial because, respectfully, the erroneous admission of evidence likely affected the jury's conclusions. *See Carson v. Polley*, 689 F.2d 562, 570 (5th Cir. 1982).

### a.  18.001 Affidavits

Both pre-trial and at trial, Defendants objected to the admission of numerous medical records without sufficient evidence that the amounts were necessary and reasonable. Specifically, Defendants objected to the Court's application of Section 18.001, which is a purely procedural statute under Texas law and, therefore, does not apply in federal court. Respectfully, the Court's admission of Plaintiff's medical records under Section 18.001 was erroneous.

Personal injury suits in Texas are subject to a limitation that past medical expenses be reasonable and necessary. *Walker v. Ricks*, 101 S.W.3d 740, 746 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) The Texas Supreme Court has held that parties seeking to recover past medical expenses must prove that the amounts they paid or incurred are reasonable. *In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d 297, 301 (Tex. 2023); *In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021); *Transport Concepts, Inc. v. Reeves*, 748 S.W.2d 302, 305 (Tex. App.—Dallas 1988, no writ). Absent such evidence, recovery of past medical expenses is prohibited. *In*

*re Allstate Indem. Co.*, 622 S.W.3d at 876.

Texas law allows a plaintiff to prove the necessity of past medical expenses in two ways: by (1) presenting expert testimony on the issues of reasonableness and necessity; or (2) presenting an affidavit prepared and filed in compliance with section 18.001 of the Texas Civil Practice and Remedies Code. *Walker*, 101 S.W.3d at 746; *Rodriguez-Narrea v. Ridinger*, 19 S.W.3d 531, 532-33 (Tex.App.—Fort Worth 2000, no pet.); *In re Chefs' Produce of Houston, Inc.*, 667 S.W.3d at 301; *Walker*, 101 S.W.3d at 746; *Transport Concepts*, 748 S.W.2d at 305.

However, the Texas Supreme Court has, on multiple occasions, expressly characterized Section 18.001 as "purely procedural." *Gunn v. McCoy*, 554 S.W.3d 645, 674 (Tex. 2018) ("We reiterate that an affidavit served under section 18.001 is 'purely procedural' and does not amount to conclusive evidence of the expenses."); *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011) ("purely procedural, providing for the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses."). Therefore, as numerous courts in the Southern District of Texas have found, the *Erie* doctrine precludes its use in federal court. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).[1]

Respectfully, the Court erred by concluding otherwise and admitting the exhibits without proof of necessity and reasonableness. Moreover, because the exhibits clearly affected the jury's conclusions on damages and the Defendants relied on the previous rulings from the Southern District regarding this matter, the admission of these documents constitute a fundamental

---

[1] *See, e.g., Lloreda v. Dolgencorp of Tex., Inc.*, No. 3:21-CV-00171, 2022 WL 203258, at *3 (S.D. Tex. Jan. 24, 2022); *Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*, No. 5:19-CV-156, 2021 WL 3821048, at *2 (S.D. Tex. Apr. 22, 2021); *Escobar v. Duke Realty Corp.*, No. CV-H-20-4124, 2021 WL 1326285, at *3 (S.D. Tex. Apr. 8, 2021); *Martinez v. Ritter*, No. CV H-20-711, 2021 WL 3913593, at *2 (S.D. Tex. Apr. 5, 2021); *Brown v. Burlington Coat Factory of Tex. Inc.*, 516 F. Supp. 3d 693, 696 (S.D. Tex. 2021); *Espinoza v. State Farm Mut. Auto. Ins. Co.*, 7:19-CV-00299, 2020 WL 4333558, at *6 (S.D. Tex. July 28, 2020); *Akpan v. United States*, No. CV H-16-2981, 2018 WL 398229, at *3 (S.D. Tex. Jan. 12, 2018).

unfairness requiring a new trial.

### b. **Dr. Choudhri's testimony**

For non-retained treating physicians, Fed. R. Civ. P. 26(a)(2)(C) requires a party to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." DOC #57, p. 3., the Court granted Defendants' Motion in Limine #7, which barred "[a]ny reference, statement, question, or attempt to elicit testimony from Dr. Mobeen Choudhri regarding the reasonableness of billing or medical treatment of other medical providers." *See* DOC #71, DOC #83. As the Court noted, Dr. Choudhri testified she cannot opine on the reasonableness of billing or medical treatment of other medical providers. DOC # 57, p. 4.

During trial testimony, however, Dr. Choudhri was permitted to testify about the billing of Victoria MRI Imaging (DOC #99, 72:16-20), Crossroads Surgery Center (DOC #99, 74:15-25), Bayou City Pain Consultants (DOC #99, 75:1-17). The only justification for this testimony was that Dr. Choudhri was "affiliated" with Crossroads Surgery Center. DOC #99, 73:14-74:2.

But because Dr. Choudhri lacked the requisite knowledge about those treatments and bills, and because she was not disclosed as an expert expected to testify about those bills, it was error to revisit the Court's in limine ruling and admit this testimony. Moreover, the testimony had a clear effect on the jury, evidenced by the verdict which awards all of Plaintiff's claimed medical expenses. For this reason, Defendants are entitled to a new trial.

### C. ALTERNATIVELY, THE COURT SHOULD GRANT WALMART'S MOTION FOR REMITTITUR

If the Court does not enter judgment as a matter of law for Walmart or order a new trial, it should, alternatively, remit the jury's awards of compensatory damages because the testimony and record do not support the jury's award of $854,000.00 for past medical expenses and

$1,200,000.00 for future medical expenses, and because Plaintiff's requests for past and future noneconomic damages were directly tied to her economic damages evidence.

This Circuit has held that when a jury verdict results from passion or prejudice, a new trial, rather than remittitur, is the proper remedy. *Wells v. Dallas Independent School District,* 793 F.2d 679, 683 (5th Cir. 1986) (citing *Westbrook v. General Tire and Rubber Co.,* 754 F.2d 1233, 1241 (5th Cir. 1985). As discussed above, a new trial is warranted in this case.

However, at a minimum, the Court should order a remittitur, which is appropriate when damage awards are excessive or so large as to appear contrary to right reason. *Id.* A verdict is excessive as a matter of law if shown to exceed "any rational appraisal or estimate of the damages that could be based upon the evidence before the jury." *Brunnemann v. Terra Intern., Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). Moreover, "when a district court believes a verdict is excessive, it may condition a denial of a new trial on the plaintiff's filing a remittitur of a stated amount." *Evers v. Equifax, Inc.*, 650 F.2d 793, 797 (5th Cir. Unit B 1981).

The amount of a remittitur is determined in accordance with the Fifth Circuit's "maximum recovery rule," which prescribes that the verdict must be reduced to the maximum amount the jury could properly have awarded." *Hansen v. Johns–Manville Products Corp.*, 734 F.2d 1036 (5th Cir.1984); *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 658–59 (S.D. Tex. 2019), judgment entered, No. CV 4:17-00624, 2019 WL 10892215 (S.D. Tex. Sept. 16, 2019).

### 1.    *Past medical expenses.*

The jury's award of $854,000.00 in past medical expenses is against the great weight of the evidence and should be remitted.

Defense Expert Mary Rossi testified regarding Plaintiff's past medical bills and, notably, identified a double-bill for the surgical assistant who assisted with Plaintiff's fusion surgery:

*Q: All right. So the next provider we see here is Sugar Land Surgery Assistants. Jessica Cuccio. Well, that sounds familiar.*

**A: So if you can go back to that earlier screen, 68593. So when we talked about Texas Spine and Neurosurgery, if you take this section for Jessica Cuccio, it comes out to $68,000. What? I think it's $68,753, I think it is, or not. 593. Okay, fine. So Texas Spine, Dr. Bindal and Ms. Cuccio, not a problem. But then when we get to this bill from Sugar Land Surgery Assistan[ts], it matches identically the charge for Ms. Cuccio's services as already listed on the Texas Spine and Neurosurgery charge. This is a classic example of what I deal with every day as a bill reviewer. It's a duplicate bill. You don't bill her twice. But they billed her under Sugar Land Surgery Assistants. Okay, but then they billed her under Texas Spine. You can do one. You can do the other. You can't do both.**

*Q: So if Ms. Valladares got these two bills, they're sitting on her kitchen table, she's thinking she needs to pay both of them. You're saying she doesn't?*

**A: One. Just one. One day of service. One assistant. These were the CPT codes. Those totals match identically. Again, it's unfortunate when it happens, but it is unusual when you see duplicate charges with different provider names. But it is the service. So, no, she's not responsible for that twice. She got the service one time.**

DOC #103, 55:10-56:10. Plaintiff's counsel agreed that the double-charge was inappropriate:

**A: . . . For example, in this case, there's the dramatic example of the $69,000 duplicate. Just, you can argue. Well, they sent the bill twice. Therefore, she owes it twice under two different provider names. No, she doesn't.**

*. . .*

*Q Right. But again, that's not something Misty's going to do.*

**A But why not? Like, why would you -- if you look at the bill, if you look at that bill where -- again, I keep referencing the double bill because it's the obvious, but --**

*Q We've agreed on that.*

Nevertheless, the double charge was reflected in Plaintiff's Exhibit 15, Sugar Land Surgical Assistants Billing Records, which has identical charges to Plaintiff's Exhibit 18, Texas Spine & Neurosurgery Center billing records. The following excerpts show the bills have the same visit ID, CPT code, service date, and totals:

*Exhibit 15 – Sugar Land Surgical Assistants*

| Date of Service | Visit ID | Procedure | Charge | Payment | Patient Payment | | Balance |
|---|---|---|---|---|---|---|---|
| 08/20/2024 | 476873701 | 63045 | $13,869.00 | $0.00 | $0.00 | $0.00 | $13,869.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 22600 | $13,876.00 | $0.00 | $0.00 | $0.00 | $13,876.00 |
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |
| 08/20/2024 | 476873701 | 22842 | $8,295.00 | $0.00 | $0.00 | $0.00 | $8,295.00 |
| 08/20/2024 | 476873701 | 20930 | $595.00 | $0.00 | $0.00 | $0.00 | $595.00 |
| 08/20/2024 | 476873701 | 20931 | $804.00 | $0.00 | $0.00 | $0.00 | $804.00 |
| | | | **Please Remit This Amount** | | | **Balance Due Total:** | **$68,593.00** |

*Exhibit 43 – Texas Spine & Neurosurgery Center*

| Date of Service | Visit ID | Procedure | Charge | Payment | Patient Payment | t | Balance |
|---|---|---|---|---|---|---|---|
| 08/20/2024 | 476873701 | 63045 | $13,869.00 | $0.00 | $0.00 | $0.00 | $13,869.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 63048 | $4,595.00 | $0.00 | $0.00 | $0.00 | $4,595.00 |
| 08/20/2024 | 476873701 | 22600 | $13,876.00 | $0.00 | $0.00 | $0.00 | $13,876.00 |
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |

| Date of Service | Visit ID | Procedure | Charge | Payment | Patient Payment | | Balance |
|---|---|---|---|---|---|---|---|
| 08/20/2024 | 476873701 | 22614 | $4,258.00 | $0.00 | $0.00 | $0.00 | $4,258.00 |
| 08/20/2024 | 476873701 | 22842 | $8,295.00 | $0.00 | $0.00 | $0.00 | $8,295.00 |
| 08/20/2024 | 476873701 | 20930 | $595.00 | $0.00 | $0.00 | $0.00 | $595.00 |
| 08/20/2024 | 476873701 | 20931 | $804.00 | $0.00 | $0.00 | $0.00 | $804.00 |

But because those amounts were improperly presented to the jury, Plaintiff's past medical expenses should be reduced, at a minimum, by $68,593.

### 2.   *Future medical expenses*

The jury's award of future medical expenses is likewise against the great weight of the evidence and is subject to remittitur. In fact, it is unsupported by the evidence altogether.

Dr. Choudhri was the only witness to testify regarding Plaintiff's future medical expenses. Dr. Choudhri opined that Plaintiff would need Botox three to four times per year, at a cost of $2,000.00 for the drug and $1,500.00 to $2,000.00 for the professional/administration fee. DOC #99, 60:4-61:3. She testified that Plaintiff would need this treatment, at a cost of $16,000 per year, for the rest of her life. DOC #99, 55:11-14.

Next, Dr. Choudhri testified that Plaintiff would need one to two radiofrequency ablations per year, at a cost of "2,000 to 2,200 … 2,000 to 2,500" each time. DOC #99, 61:24-62:10. This amounted to an annual cost of $5,000.

Third, Dr. Choudhri testified that Plaintiff would need epidural injections about twice per year. DOC #99, 62:18-63:1. She estimated the cost to be between $800 and $1,000, making the annual cost $2,000.

Fourth, Dr. Choudhri testified that Plaintiff would possibly require a spinal cord stimulator. To receive the stimulator, Plaintiff would need a one-time trial at $10,000 (DOC #99, 66:10-12), the implantation of the device at "40 to 45,000" (DOC #99, 66:15-17) or "45,000 to 50,000" (RR V2, 68:3-5), and two to three battery changes over the course of her life (one change every 8-10 years) for $30,000 to $35,000 each (RR V2 69:1-8).

Finally, Dr. Choudhri testified that Plaintiff may need a pain pump. DOC #99, 66:21-67:14. The pump would require a one-time trial at a cost of $800 to $1,000, DOC #99, 67:16-21, and the implant would cost $45,000 to $50,000.

Dr. Choudhri did not opine on Plaintiff's life expectancy, but Plaintiff's Exhibit 52,

National Vital Statistics Life Tables, indicated that Plaintiff's life expectancy is 27.2 years.

Viewing the evidence in the light most favorable to the Plaintiff, Plaintiff's future care can be summarized as follows:

*Plaintiff's Future Medical Expenses per Dr. Choudhri*

| Year Number | Botox Injections | Ablations | Epidural Injections | Spinal Cord Stimulator | Pain Pump | Annual Cost |
|---|---|---|---|---|---|---|
| 1 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | $ 60,000.00 | $ 51,000.00 | $ 134,000.00 |
| 2 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 3 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 4 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 5 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 6 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 7 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 8 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 9 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | $ 35,000.00 | | $ 58,000.00 |
| 10 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 11 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 12 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 13 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 14 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 15 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 16 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 17 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | $ 35,000.00 | | $ 58,000.00 |
| 18 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 19 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 20 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 21 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 22 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 23 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 24 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 25 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | $ 35,000.00 | | $ 58,000.00 |
| 26 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 27 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| 28 | $ 16,000.00 | $ 5,000.00 | $ 2,000.00 | | | $ 23,000.00 |
| Totals: | $ 448,000.00 | $ 140,000.00 | $ 56,000.00 | $ 165,000.00 | $ 51,000.00 | $ 860,000.00 |

Notwithstanding that Dr. Choudhri's testimony supported, at most, an award of future damages of $860,000, the jury inexplicably awarded $1.2 million. Therefore, because there was no evidence to support the jury's award, the Court should reduce the future medical expenses award by $340,000, to $860,000.

### 3.    *Past and future pain, suffering, and mental anguish*

In closing, Plaintiff directly tied the amount of her pain, suffering, and mental anguish damages to the amount of her economic damages, arguing that the jury should award an amount "close to" her past and future medical bills: "For the past pain and mental anguish, an amount. We suggest an amount close to her past medical bills, $850,000. For future pain and mental anguish, an amount close to her future medical bills." DOC #103, 121:7-10. Therefore, the jury's awards of past and future non-economic damages should be remitted in an amount commensurate with the reductions of the economic damages. Because Plaintiff's past medical expenses should be reduced by 8.03%, her past noneconomic damages should likewise be reduced by 8.03%, resulting in a reduction of $60,225.00, to $689,775.00. And because Plaintiff's future medical expenses should be reduced by 28.33%, her future noneconomic damages should likewise be reduced by 28.33%, resulting in a reduction of $70,833.33, to $179,166.67.

### III. CONCLUSION

For the reasons set forth above, the Court should grant Walmart's renewed motion for judgment as a matter of law or, in the alternative, order a new trial or a remittitur.

Respectfully submitted,

**BUSH & RAMIREZ, PLLC**

*/s/ Matthew Leslie*
John A. Ramirez
Texas Bar No. 00798450
Federal Bar No. 21280
Matthew T. Leslie
Texas Bar No. 24061885
Federal Bar No. 3889682
Kelsey Heaton
Texas Bar No. 24080501

Federal ID No. 3930733
5615 Kirby, Suite 900
Houston, Texas 77005
T: (713) 626-1555
F: (713) 622-8077
**ATTORNEYS FOR DEFENDANTS,
WAL-MART STORES TEXAS, LLC
AND WALMART, INC.**